Isaiah WEBB, Plaintiff,

v.

The GOVERNMENT FOR THE DIS-
TRICT OF COLUMBIA, DEPART-
MENT OF CORRECTIONS, Defendant.

Civil Action No. 90–2787(RCL).

United States District Court,
District of Columbia.

Aug. 4, 1997.

Michael L. Martinez, Melinda Burrows, Theorore W. Small, Jr., Lynn Estes Calkins, Bradley D. Wine, Marc E. Miller, Holland & Knight, Washington, DC, for plaintiff.

Lisa A. Bell, Alan S. Block, Office of Corp. Counsel, Washington, DC, for defendant.

### FINDINGS OF FACTS AND CONCLUSIONS OF LAW

LAMBERTH, District Judge.

This matter comes before the court on plaintiff's motion for sanctions for defendant's failure to produce or verify destruction of plaintiff's personnel file and plaintiff's motion to compel and for sanctions. On March 3, 1997, the court granted plaintiff's motion for sanctions for the failure to produce or verify destruction of plaintiff's personnel file but withheld a decision on the appropriate sanction until the pretrial conference. After two pretrial hearings, the court concluded that because the destruction of documents was far more extensive than originally represented, the only appropriate remedy was for the entry of a default judgment in favor of plaintiff. The trial date was vacated, and plaintiff submitted proposed findings of facts and conclusions of law as ordered by the court. Defendant filed a motion for reconsideration, as well as its own proposed findings of fact and conclusions of law. Based upon the foregoing, the court determines, by clear and convincing evidence, the following findings of fact:

## I.  FINDINGS OF FACT

### A.  Procedural History

1.  Plaintiff Isaiah Webb filed this suit in November of 1990, alleging civil rights violations by the District of Columbia pursuant to 42 U.S.C. § 2000e *et seq.* (Title VII), 29 U.S.C. §§ 216 and 621, violation of the Four-teenth Amendment and 42 U.S.C. § 1983. First Complaint at 1. Plaintiff averred that the District of Columbia Department of Corrections had discriminated against plaintiff because of race, gender, and personal appearance by failing to promote plaintiff to "in excess of 100 positions in many different job categories to include, but are not limited to, Staff Assistant, Major, Chaplain, Executive Assistant and Programs Associate." First Complaint at 2. Additionally, plaintiff alleged that defendant had a policy and practice of promoting based on race and gender which had led to a disproportionate number of whites and females in policy-making positions and higher paying jobs. *Id.* Plaintiff did not identify any specific position that he alleged he had been denied because of unlawful discrimination.

2.  Plaintiff filed an administrative complaint regarding the hiring for position 89–125 on April 11, 1991. Letter attached as DX 3.[1] Plaintiff alleged numerous irregularities in the rating, ranking, and selection of candidates for the position. *Id.*

3.  Plaintiff filed a First Amended Complaint on May 13, 1992. Plaintiff voluntarily dismissed his earlier Fourteenth Amendment claim, as well as his personal appearance discrimination claim. Plaintiff expanded his allegations to include charges of retaliation. Plaintiff further alleged numerous statistics to support his earlier claim of a pattern and practice of race and gender discrimination, in addition to listing 29 specific jobs that he believed unqualified or less qualified people had been selected over plaintiff for unlawful reasons. First Amended Complaint at 14–25. Plaintiff identified 35 individuals who had been promoted over him for alleged race and gender discrimination, as well as 38 individuals that plaintiff argued had been promoted over him in retaliation for protected activities. *Id.* at 25–26. Neither position 89–125 nor 90–167 were identified by number by plaintiff. However, plaintiff did include Patricia Britton, the selectee for position 89–125, in his list of individuals allegedly chosen

---

1.  "DX" refers to an exhibit submitted with defendant's proposed findings of facts and conclusions of law. "PX" refers to an exhibit submitted with plaintiff's proposed findings of fact and conclusions of law.

over plaintiff for gender reasons.[2] at 18. Plaintiff also identified Robert Fulton and Steven Smith, two of the selectees for position 90–167, in his list of individuals allegedly chosen over plaintiff because of racial discrimination.[3] *Id.* at 23. Additionally, plaintiff cited to numerous statistics in support of his argument that the Department of Corrections engaged in a pattern and practice of race and gender discrimination. Id. at 3–5.

4. Plaintiff withdrew his administrative complaint regarding position 89–125 in June of 1992.

5. In June of 1994, plaintiff was terminated from his employment after two Department of Corrections' investigatory committees found probable cause that plaintiff had committed sexual harassment against two female employees.

6. On November 1, 1996, plaintiff filed a final amended complaint. In his Fourth Amended Complaint, plaintiff limited his claims of discrimination to three positions: Special Assistant, position 89–125; Correctional Program Officer, position 89–163, and Supervisory Correctional Officer/Major, position 90–167. Additionally, plaintiff alleged that his termination was done for the purpose of retaliation.

7. On November 18, 1996, this court ordered that discovery would conclude on January 24, 1997, and that the trial would commence on March 24, 1997.

8. After setting the trial date in November of 1996, the court reiterated numerous times to both parties that the March 1997 trial date was firm and would not be moved.

9. On March 20, 1997, on the second day of the pretrial conference, the court stated that a default judgment would be entered in favor of plaintiff and vacated the trial date and requested plaintiff to submit proposed findings of fact and conclusions of law. Plaintiff did so, as did the District. Additionally, the District filed a motion asking the court to reconsider the decision to enter a default judgment against the District.

## B. Discovery Time Line

10. Discovery in this matter was conducted in two stages; the first occurred in 1990 and 1991, and the second stage occurred after plaintiff filed his fourth complaint in 1996.

11. By order, discovery was to close January 24, 1997. However, because of the defendant's failure to produce discovery in a timely fashion, the court extended the time for discovery until February 24, 1997. Additionally, plaintiff received leave of the court to take additional discovery beyond the February 24, 1997 deadline.

12. Plaintiff served three sets of discovery requests relevant to his motion for sanctions. On October 30, 1996, plaintiff served on defendant plaintiff's request for production of documents (the "first document request"). On November 27, 1996, plaintiff served his second set of interrogatories and his tenth request for production of documents (the "second document request"). The District served its initial responses to plaintiff's document requests on December 3, 1996. The district served its initial responses to the November 27, 1996 requests on January 13, 1997.

13. Instruction "J" to the first document request states that "[i]f it is maintained [by the District] that any document which is requested has been destroyed, set forth the contents of the document, the date of destruction, and the name of the persons who authorized or directed such destruction." First Document Request at 4, attached as PX 8. This instruction was incorporated by reference into plaintiff's second document request. Tenth Document Request at 1 attached as PX 10.

14. Instruction 2 to the second interrogatories stated to the District that "[i]f an interrogatory cannot be answered in full, answer to the extent possible, specify the reasons for your inability to answer the remain-

---

2. Plaintiff applied for position 89–125, Special Assistant, in the summer of 1989. Patricia Britton, a black female, was selected for the position.

3. Plaintiff applied for position 90–167, Major, in the fall of 1990. Robert Fulton and Steven Smith, both white males, were two of the six selectees.

der and state whatever information you have regarding the unanswered portion." Second Set of Interrogatories at 1–2 attached as PX 9.

15. On December 3, 1996, the District produced a two-inch thick envelope of documents in response to the 23 individual requests in plaintiff's first document requests. Rather than producing all documents that it agreed should be produced, the District indicated in eleven of its responses that "it had forwarded the request to the appropriate agency for documents responsive to [the] request." By letter dated December 6, 1996, plaintiff's counsel inquired of the District's counsel when plaintiff could expect to receive documents from the agencies to which the District had forwarded the document requests. Letter attached as PX 13.

16. At a status conference on December 6, 1996, the court agreed with plaintiff that the District's response that it had forwarded requests to appropriate agencies was insufficient. Transcript at 23 attached as PX 14. At that time, the court ordered that the parties meet and confer in an attempt to resolve that issue as well as other deficiencies in defendant's first document responses. *Id.* at 27.

17. Pursuant to the court's December 6, 1996 order, on December 18, 1996, counsel for the parties met in an attempt to resolve the deficiencies in defendant's first document responses. Plaintiff's counsel sent a letter memorializing the agreements reached during the December 18, 1996 meeting to the District's counsel on December 19, 1996. Letter attached as PX 15.[4]

18. Although during the December 18 meeting the District had agreed to supplement its document production, supplemental documents were not provided on a timely basis. Throughout the next month, plaintiff's counsel sent counsel for the District numerous letters requesting that supplemental documents be produced promptly. Letters attached as PX 16.

19. The District's document production subsequently began trickling in to plaintiff's counsel in early January, 1997. The District produced documents to plaintiff on at least seven separate dates beginning in early January, 1997. Letters attached as PX 17. In addition, numerous District employees were subpoenaed by plaintiff to produce documents at their depositions. In response to the subpoenas, seven District employees produced documents which were District of Columbia records covered by plaintiff's first document requests that should have been produced by the District. Letters attached as PX 18.

20. On January 24, 1997, counsel for the parties met to confer regarding the deficiencies in defendant's second interrogatory responses and second document requests, as well as a number of remaining deficiencies in defendant's responses to the plaintiff's first document requests. At that meeting, counsel for the District again assured plaintiff's counsel that the District's discovery responses would be completed in the immediate future.

21. On January 27, 1997, plaintiff filed two motions with this court: 1) a motion to compel full and complete responses to plaintiff's first document requests, second interrogatories and second document requests and 2) a motion to sanction defendant for failure to produce or verify destruction of plaintiff's personnel file.

22. On February 4, 1997, following a January 28, 1997 status conference, the District filed its opposition to the motion to compel and the motion for sanctions. The District also served supplemental responses to the document requests, the second interrogatories, and second document requests with its opposition papers.

23. On February 7, 1997, the court heard argument on the motion to compel and the motion for sanctions. At the hearing, counsel for the District conceded that 29 C.F.R. § 1602.31 imposed an obligation on the Dis-

---

4. On January 14, 1997, counsel for the District sent a letter to plaintiff's counsel numerating several disagreements with the statements memorialized in the December 19, 1996 letter. This attempt to change, a month after the meeting, what was memorialized a day after the meeting, is wholly inadequate. This attempt is a further example of defendant's dilatory tactics evidenced throughout the record which prejudiced plaintiff's trial preparations.

trict to maintain plaintiff's personnel file and the merit case files after plaintiff initiated his discrimination claims. Transcript at 39–40 attached as PX 21. Counsel further stated on the record that "in this instance at least, (the regulation) was not adhered to." at 40, 44.

24. During the February 7 hearing, the District also admitted that there were no records indicating that the District Office of Personnel, which maintained the merit case files at issue in this case as well as portions of plaintiff's personnel file, was ever notified regarding this litigation or the need to maintain all relevant files until the litigation was completed. *Id.* at 50–51.

25. On February 20, 1997, plaintiff moved for leave to take the deposition of the District's custodian of records. The court granted plaintiff's motion on March 1, 1997.

26. On February 24, 1997, the day of the discovery cut-off, the District further supplemented its responses to plaintiff's first document requests, plaintiff's second interrogatories, and plaintiff's second document requests. Supplemental Responses attached as PX 22 and 23.

27. On March 1, 1997, the court issued orders granting plaintiff's motion to compel, motion for sanctions, and motion for leave to depose the District's custodian of records. The order granting the motion to compel ordered the District to provide full and complete responses to plaintiff's discovery requests no later than March 6, 1997 and further required the District to confirm in writing its compliance with plaintiff's outstanding discovery requests. The order granting the motion for sanctions stated that the court would determine the appropriate sanctions at the pretrial conference or post-trial.

28. On March 6, 1997 the District provided supplemental responses to plaintiff's first document request and plaintiff's second interrogatories. Supplemental Responses attached as PX 24 and 25.[5] The District did not provide written confirmation that it had complied with all of plaintiff's outstanding

discovery requests. Transcript at 90 attached as PX 26.

29. Plaintiff took the deposition of the District's custodian of records on March 13, 1997.

30. On March 19 and 20, 1997, the court heard argument regarding the appropriate sanction for the District's destruction of records.

## C. Personnel File

31. The documents contained in the plaintiff's personnel file were covered by the following request in plaintiff's first document requests:

Document Request 9: Any and all documents which refer or relate to communications between you and plaintiff during the period 1989 to the present, including, but not limited to, all correspondence, reprimands (informal and formal), warnings, and performance appraisals.

The District's Initial Answer to Document Request 9: Objection. This request seeks information that may be protected by the deliberative process privilege, attorney work product, and/or attorney client privileges. Defendant further objects on the basis that this request is overly broad, overburdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence at trial of this matter. Defendant further objects on the basis that, to the extent information responsive to this request has already been provided and/or made available to plaintiff, production of such information would be duplicative. Further, plaintiff should be in possession of all communications that defendant has made to him, and that he has made to defendant. Without waiving any objections, see Attachment C. A request had been made to the appropriate agency for additional documents responsive to request number 9. If additional, non-objectionable documents responsive to this request are made available, they will be provided to plaintiff for inspection and copying at a

---

5. In providing the supplemental answers, defendants improperly included objections to all of the questions, even though the court had granted the motion to compel.

mutually agreeable time and place. Response at 6 attached as PX 11.

32. At the December 18 meeting, the parties agreed that the District would provide documents responsive to Request 9 located in any file at DOC (or branch location) or the D.C. Office of Personnel from 1988 to present. In addition, the District also agreed to contact William Plaut, Paul Quander, Louis Cheney, Virginia Etheridge, John Lattimore, Ronald McClain, Gwen McCathorine, Margaret Moore, and William Hinton to determine whether any of these individuals had responsive documents. The agreement was memorialized in the letter sent by plaintiff's counsel to the District's counsel the morning following the December 18 meeting. Letter attached as plaintiff's Exhibit 15.[6]

33. Despite numerous requests by plaintiff's counsel, the District did not provide any additional documents in response to Request 9, including documents from plaintiff's personnel file covering his tenure at the Department of Corrections until January 27, 1997.

34. On January 14, 1997, the District produced a folder of documents identified as plaintiff's personnel file. None of the documents produced on January 14 related to plaintiff's employment at the Department of Corrections but instead related to plaintiff's employment at the District of Columbia Department of Human Services, a position he held subsequent to his termination by the Department of Corrections. Supplemental Responses at 7 attached as PX 19.

35. On January 16, 1997, two and half months after the first document requests were served, counsel for the District informed plaintiff for the first time that the District could not locate plaintiff's personnel file. Transcript at 2 attached as PX 27.

36. On January 23, 1997, the District's counsel took the position that the District had produced plaintiff's personnel file to plaintiff at a previous point in the litigation. In response, plaintiff's counsel searched the records complied prior to their involvement in the case and could not find any request for plaintiff's personnel file, much less any evi-

dence that the file had been produced. By letter dated January 23, 1997, plaintiff's counsel asked counsel for the District to identify when and under what circumstances plaintiff's personnel file had been previously produced. Letter attached as PX 28. The District did not respond to this letter.

37. On January 27, 1997, three months after plaintiff served its first document requests and less than a month before the discovery cut-off, the District produced 92 pages identified as plaintiff's personnel file. Letter attached as PX 29. On January 28, 1997, the District produced an additional 48 pages identified as the "Confidential" portion of plaintiff's personnel file. Letter attached as PX 30. Neither of these productions included material previously maintained in plaintiff's personnel file that had been removed and destroyed by District personnel.

38. Karen Adams, a District of Columbia Office of Personnel Supervisory Personnel Management Specialist responsible for record retention and retrieval at the Department of Corrections, provided testimony by way of a declaration filed with the court on February 4, 1997. In this declaration, Ms. Adams stated that she had located plaintiff's official personnel file for the time he was employed by the Department of Corrections, but that portions had been taken out of the file when it was being prepared for archives. The declaration stated that "all temporary records had been removed" when the District finally retrieved plaintiff's personnel file from a box bound for storage in St. Louis. Declaration attached as PX 1.

39. The list of temporary records that "could possibly have been removed" include corrective/adverse action final decision letters and official reprimands. In its Opposition to Plaintiff's Motion for Sanctions, the District admitted that "there is no way of knowing how much of the identified information may have been discarded by the District in the course of preparing plaintiff's file for archiving." *Id.* at 3.

40. Notwithstanding the declarations by Ms. Adams included with the District's oppo-

---

6. As discussed earlier, the court accepts as accurate plaintiff's representations of the agreements

reached at the meet and confer conference because of plaintiff's contemporaneous records.

sition papers, in its first supplemental responses served on February 4, 1997, the District provided the following "supplemental" information in response to Request 9:

Defendant produced plaintiff's Department of Human Services Personnel File on January 14, 1997 and produced his Department of Corrections Personnel File on January 28, 1997, including the "Secured File" portion. Additionally, see Attachment E for additional non-official files concerning plaintiff. Supplemental Response at 7 attached as PX 19.

41. Defendant's supplemental response to Request 9 failed to disclose, as expressly required by Instruction J to the first document requests, that key portions of plaintiff's personnel file had been destroyed. Neither plaintiff's second supplemental responses served on February 24, 1997, nor its third supplemental responses, served on March 6, 1997, corrected this glaring omission. See Supplemental Responses attached as PX 22 and 25.

42. At the February 7, 1997 hearing on the motion for sanctions, counsel for the District refused to go on record that the District had discarded any of the documents identified in Ms. Adam's February 3, 1997 declaration. Counsel instead stated that the documents identified in Ms. Adam's declaration were nothing more than "the universe of documents that might have been discarded." Transcript at 29 attached as PX 21.

43. On February 12, 1997, less than two weeks before the close of discovery, the District produced 17 additional pages of documents identified as coming from the Washington Lawyer's Committee for Civil Rights and Urban Affairs. These documents originally were produced by the District to the Lawyer's Committee in connection with the case styled *Bonds v. Department of Corrections,* Civil Action No. 93–2420 (D.D.C.).

44. Of the 17 pages produced on February 12, only seven arguably came from plaintiff's personnel file. Supplemental Responses attached as PX 31. Even after the February 12 production, plaintiff still did not have his performance evaluations for two periods critical to the litigation, the period from 4/1/87 through 3/31/89 and 4/1/90 through 6/30/91.

45. On March 6, 1997, in response to the court's March 1, 1997 order granting leave to take the deposition of the District's custodian of records, plaintiff served a notice of deposition pursuant to Fed.R.Civ.P. 30(b)(6). Notice attached as PX 32. The notice requested, in relevant part, that the District produce a witness able to testify regarding the following:

The District's retention and/or destruction of any and all personnel records relating to Plaintiff's employment at the Department of Corrections, including but not limited to Promotion Panel Recommendations, Counseling Forms and Performance Evaluations. Id.

46. On March 13, 1997, the District proffered Karen Adams in response to plaintiff's March 6, 1997 Notice of Deposition. Ms. Adams testified that she did not know when the District first began looking for plaintiff's personnel file. Transcript at 86–91 attached as PX 33. Despite the apparent confusion with respect to who searched for plaintiff's personnel file and when, Ms. Adams testified that eventually the District located two personnel files for plaintiff. Id. at 100–01. The first personnel file was obtained from the Federal Records Center in St. Louis and was described to Ms. Adams by Corporation Counsel as being "very scant." Id. at 100. The second personnel file was plaintiff's Department of Corrections file which Ms. Adams located in boxes packed to be sent to St. Louis in approximately January of 1997. Id. at 100–01.

47. Ms. Adams confirmed and expanded on the information in her February 3, 1997 declaration, testifying that there were no temporary records located in plaintiff's Department of Corrections file. Id. at 107. Without knowing specifically what was included in plaintiff's temporary records files, Ms. Adams testified that generally temporary records files contain various personnel evaluations and justifications related thereto, "[r]equests for personnel actions, position data sheets, position descriptions, ... emergency contact information[, and ... ] official letters of reprimands...." Id. at 78–79.

Ms. Adams was unable to testify whether plaintiff's temporary records file had in fact been destroyed but acknowledged that she had no reason to believe that it was not. *Id.* at 107.

48. When questioned regarding her familiarity with the federal EEOC regulations regarding the destruction of documents, Ms. Adams testified that she had received no training about, and was unaware of, EEOC regulations regarding the destruction of documents. *Id.* at 113–14.

49. Despite the government's attempts to argue otherwise, the court finds that there has been no deposition testimony that plaintiff's personnel file was not reviewed during either the promotion determinations or the termination proceeding. Defendant attempts to rely on the testimony of Louis Chaney, Jr. for this proposition.[7] Having reviewed both transcripts of Chaney's deposition, the court finds that Mr. Chaney never testified regarding the actual use of a personnel file in either of the personnel actions at issue, or of the usual practice of using a personnel file in a personnel matter.

50. The documents that were once in plaintiff's personnel file could be vitally relevant to proving plaintiff's claim that the District's termination of plaintiff was in retaliation for plaintiff's protected activity and the bringing of the lawsuit. Because plaintiff cannot even identify what documents were destroyed, it is impossible to determine what impact the destroyed documents might have had on plaintiff's claims.

51. At the status conference on March 20, 1997, counsel for the District went on record for the first time with a direct admission that portions of plaintiff's personnel file had been destroyed. Transcript at 80 attached as PX 26.

## D. Merit Case Files

52. Merit case files were established by the D.C. Office of Personnel to hold wall

documents relevant to [the] particular vacancy [used] in the "D.C. Office of Personnel." Transcript at 36 attached as PX 6. Merit case files generally contain "the qualification standard used for [a] particular position, the [form] 52, the request for personnel action received from management, the applications as they are received, the staffer's rating and ranking, the selection certificate once it's developed ... [and] the copy of the Form 1 which is the actual personnel action that resulted from the request for personnel action once the selection process has been made." *Id.* at 36–37.

53. The information in the Merit Case Files is responsive to the following discovery requests.

*Document Request 5 (First Document Requests)*

Any and all documents referring or relating to all candidates who applied for and/or who were considered for the following DOC positions:

DS–301–12  Special Assistant to the Director VAN DC–89–125

DS/12  Correctional Program Position VAN DC–89–163

DS/12  Major's Position Van DC–89–167

*The District's Initial Answer to Document Request 5 (Plaintiff's First Document Requests)*

Objection. This request seeks information that may be protected by the deliberative process privilege. Defendant further objects on the basis that this request is overly broad, overburdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence at trial of this matter. Defendant further objects on the basis that, to the extent information responsive to this request has already been provided and/or made available to plaintiff, production of such information would be duplicative. Additionally, this request seeks information contained in the personnel records of District of Columbia employ-

---

**7.** The court notes that in citing to the testimony of Louis Chaney, counsel for the defense provides a single page cite, and then cites to the entire second day of Mr. Chaney's deposition which consists of 117 pages. This is only one of several instances where counsel for the defendant carelessly cites to entire depositions without providing any guidance to the court as to what testimony is actually being relied upon for specific points. The court has looked for defendant's several needles and concludes that they are not in the haystack.

ees. Such information is prohibited from release by D.C.Code § 1–632.3 *et seq.* Without waiving any objections, see Attachment B. A request has been made to the appropriate agency for additional documents responsive to request number 5. If additional, non-objectionable documents responsive to this request are made available, they will be provided to plaintiff for inspection and copying at a mutually agreeable time and place. Responses at 3–4 attached as PX 11.

*Interrogatory No. 25 (Plaintiff's Second Interrogatories )*

Identify all persons who were consulted and/or participated in the decision to select Patricia Britton for the position as a DS–301–12 Special Assistant to the Director, Vacancy Announcement No. DC 89–125, the qualifications, experience and residency of Ms. Britton at the time she applied for the position, and each and every reason why Ms. Britton was and why Mr. Webb was not selected for this position.

*The District's Initial Answer to Interrogatory 25*

The requested information, if it exists, is contained in Patricia Britton's Personnel File previously provided. Additionally see Attachment D, Vacancy Announcement 89–125. Answers at 21 attached as PX 12.

*Interrogatory No. 27 (Plaintiff's Second Interrogatories )*

Identify all persons who were consulted and/or participated in the decision to select Robert Fulton for the position as a DS–12 Major, Vacancy Announcement No. DC 90–167, the qualifications, experience and residency of Mr. Fulton at the time he applied for the position, and each and every reason why Mr. Fulton was and Mr. Webb was not selected for this position.

*The District's Initial Answer to Interrogatory 27*

The requested information is contained in Attachment F, Selection Certificate and Interview results, Vacancy Announcement 90–167. These documents speak for themselves and were provided to plaintiff on January 6, 1997. *Id.* at 21–22.

*Interrogatory No. 28 (Plaintiff's Second Interrogatories)*

Identify all persons who were consulted and/or participated in the decision to select Steven Smith for the position as a DS–12 Major, Vacancy Announcement No. DC 90–167, the qualifications, experience and residency of Mr. Smith at the time he applied for the position, and each and every reason why Mr. Smith was and why Mr. Webb was not selected for this position.

*The District's Initial Answer to Interrogatory 28*

See answer to Interrogatory Number 27. *Id.* at 22.

*Interrogatory No. 37 (Plaintiff's Second Interrogatories)*

Please state the name, race, and gender of all individuals who applied and were considered for Vacancy Announcement No. DC 89–125, Vacancy Announcement No. DC 89–163, and Vacancy Announcement No. DC 90–167.

*The District's Initial Answer to Interrogatory 37*

See the Vacancy Announcement 89–125, Attachment C. Also, see Attachment E. Defendant believes that Vacancy Announcement 89–163 does not exist, but that for Vacancy Announcement 89–63 the selectee was Mr. Walter Hill, an African–American male who was selected over plaintiff. See Attachment G for Vacancy Announcement 90–167. *Id.* at 25–26.

*Document Request 1 (Plaintiff's Second Document Requests )*

All documents identified in your responses to Plaintiff's Second Set of Interrogatories.

*The District's Initial Answer to Document Request 1*

See the documents attached to Defendant's Answers to interrogatories. Those documents identified in response to Plaintiff's second set of interrogatories and not attached will be made available to Plaintiff's counsel for inspection and copying at a mutually-agreed time. Responses at 2 attached as PX 34.

54. On December 13, 1996, Plaintiff transmitted a draft Notice of Deposition pursuant to Fed.R.Civ.P. 30(b)(6) to defense counsel so

that the District could identify the appropriate witnesses for scheduling purposes. Notice attached as PX 35. The draft notice indicated that Plaintiff intended to examine

a representative of the District of Columbia able to testify on behalf of the District of Columbia regarding the following matters:

&ast; &ast; &ast; &ast; &ast; &ast;

(2) The qualifications, experience and residency of Patricia Britton for DS–301–12 Special Assistant to the Director position, Vacancy Announcement No. DC 89–125, the reason(s) why Mr. Webb was not selected for this position, the reason(s) why Ms. Britton was selected, and all documents related to or generated in connection with this vacancy announcement;

&ast; &ast; &ast; &ast; &ast; &ast;

(4) The qualifications, experience and residency of Robert Fulton and Steven Smith for their selection for the DS–12 Major position, Vacancy Announcement No. DC–90–167, the reason(s) Mr. Webb was not selected for this position, the reason(s) why Mr. Smith and Mr. Fulton were selected, and all documents related to or generated in connection with this vacancy announcement;

&ast; &ast; &ast; &ast; &ast; &ast;

(*Id.*) On January 23, 1997, Plaintiff served a formal 30(b)(6) Deposition Notice which included descriptions identical to those set forth above. Notice attached as PX 36.

55. During the December 18 meeting, the parties agreed that the District would respond to Plaintiff's Request 5 of the second document request (documents relating to the persons considered for the positions at issue in Plaintiff's discrimination claims) by producing documents that were, or reasonably could or should have been, considered by the persons who made the selections for the named positions, as well as the documents actually generated during the application and selection process. To the extent such documents existed, the District also agreed to provide post-selection documents that mention factors that might have had an impact on the selection decision for the named positions. This agreement was memorialized in a letter sent by Plaintiff's counsel to the District's counsel the day following the December 18 meeting. Letter attached as PX 15.

56. In early January, 1997, counsel for the District stated to counsel for Plaintiff that documents relating to the positions at issue in Plaintiff's discrimination claims might have been destroyed pursuant to the District's document destruction policy. By letter dated January 16, 1997, Plaintiff's counsel asked the District's counsel to confirm whether the destruction actually occurred and, if so, to describe the date and circumstances of the destruction. Letter attached as plaintiff's Exhibit 37.

57. In a February 3, 1997 declaration filed with the District's Opposition to the Motion for Sanctions, Joan Murphy, a District of Columbia Office of Personnel Supervisory Personnel Management Specialist responsible for record retention and retrieval for the Department of Corrections, stated that all of the merit case files relevant to Mr. Webb's discrimination claims would have been destroyed two years after the end of the selection process in accordance with District regulations. Declaration at 3–4 attached as PX 7.

58. In her February 3, 1997 declaration, Ms. Murphy states further that she informed counsel for the District of this destruction "immediately" upon receiving the request for documents relating to Mr. Webb's non-promotion to fill DC–89–125, DC–89–163 and DC–90–167. *See id.*

59. On February 4, 1997, the District proffered Joan Murphy to testify regarding, among others, categories 2 and 4 on Plaintiff's January 23, 1997 Notice of Deposition, addressing the selection of persons to fill the positions at issue on Plaintiff's discrimination claims. Notice attached as PX 36.

60. In response to questions from plaintiff's counsel, Ms. Murphy testified that it is the role of the Office of Personnel to determine the qualifications of applicants for purposes of listing individuals on the selection certificate and that it is the selecting agency, not her office, which is involved in selecting particular individuals from the selection cer-

tificate to fill the positions. See Transcript at 123, 137–38, 166 attached as PX 6. Thus, when questioned as to the specifics of what occurred in selecting the selectees for the vacancy announcements at issue in this litigation, Ms. Murphy was unable to provide testimony other than what was evident from the face of the documents provided to her. *See generally id.* at 97–271.

61. Because of her limited role in the selection process, Ms. Murphy was further unable to authenticate the documents utilized in the selection process. *See, e.g., id.* at 174–76. In fact, even when Ms. Murphy was questioned with respect to documents which the Office of Personnel would have maintained in its Merit Case Files, Ms. Murphy was unable to identify whether those documents were the actual documents utilized for qualifying individuals for the two vacancy announcements. For example, Ms. Murphy was not able to identify whether the position description for a special assistant position was the actual position description utilized for filling Vacancy Announcement Number 89–125. *See id.* at 142. In another instance, based on the information located on the face of the document, Ms. Murphy testified that the position description for a supervisory correctional officer position was not the position description utilized for selecting individuals for Vacancy Announcement Number 90–167. *See id.* at 159–60.

62. Acknowledging that Ms. Murphy was not the proper witness to testify on behalf of the District regarding many of the items on the notice of deposition, counsel for the District represented several times on the record that the District was aware of *no* witness who could testify as to how or why the selectees were selected for the three positions at issue in the Fourth Amended Complaint and how and why Plaintiff was not. *See id.* at 130–31, 145–47, 176, 182–84. Counsel for the District further represented that, if a witness with any such information was identified, the District would proffer that individual for questioning. *Id.* at 130–31, 145–47, 176, 182–84.[8] No such witness was

*ever* proffered by the District for a continuation of this Rule 30(b)(6) deposition until two weeks before the scheduled trial date—well after the close of discovery.

63. The District's failure to produce information regarding the selection of individuals for Vacancy Announcement Numbers 89–125 and 90–167 is further reflected in defendant's responses to plaintiff's discovery responses.

64. Defendant's First and Second Supplemental Responses to Document Request 5, served on February 4 and 24, 1997 respectively, were as follows:

*First Supplemental Response:* Defendant stipulates that it will not assert that applicants other than the final selectee(s) were more qualified than plaintiff. See Attachment A, position description for Vacancy Announcement 89–125. For selectee Patricia Britton–Jackson defendant has previously produced her Personnel File and a copy of the *Initial Decision,* OEA Docket No. 1602–0251–89 which indicates that the plaintiff withdrew his appeal of this matter.

Defendant contends that Vacancy Announcement 89–163 did not exist. Yet, since plaintiff has alleged that Denise Shelton was a selectee for such announcement the defendant previously supplied Ms. Shelton's Personnel File and Vacancy Announcement 89–63, DS/12 Correctional Program Position. Moreover, Denise Shelton did not apply for Vacancy Announcement 89–63 and the plaintiff did. The selectee for Vacancy Announcement 89–63 was Mr. William Hill, and African American male. For Vacancy Announcement 90–167, DS/12 Major's Position, defendant previously supplied the Personnel Files for Robert Fulton, Warren Little, Rodney Carter, Robert Lytle, Steven Smith. See Attachment C, for the training files for Robert Fulton, Rodney Carter, Robert Lytle, and Steven Smith. Defendant has requested the Personnel File for David Rapelyea from the District of Columbia Office of Personnel and is awaiting the requested file to arrive from St. Louis.

8. The District states that counsel's representations at the deposition were incorrect. The fact that counsel may have been wrong does not

change the fact that the representations were made and that it took the District over a month to correct them.

Moreover, to defendant's knowledge no one was promoted from this announcement to the position ·of Major. Further, see defendant's supplemental answers to Plaintiff's Second Set of Interrogatories Nos. 27 and 28. Supplemental Response at 4–5 attached as PX 19.

*Second Supplemental Response:* The following documents are available for review and/or copying by plaintiff's counsel:

Departmental training documents of Patricia Britton, Rodney Carter, and Personnel File for David Rapelyea; Plaintiff's Department of Corrections EEOC file # 100–91–425, and OEA File for Docket Nos. 1602–0251–89, 1602–0170–91, 1602–0171–91, 1602–0169–91, 1602–0230–89, 1602–0167–89, 1602–0036–91; and unredacted Personnel Files for Robert Fulton, Warren Little, Robert Lytle, Rodney Carter, Steven Smith, Denise Shelton, and Patricia Britton. Supplemental Response at 5 attached as PX 22.

*Third Supplemental Response: Defendant has provided all relevant documentation concerning these positions,* including, vacancy announcements, selection certificates and Personnel Files (applicants for No. 90–167 and Patricia Britton for No. 89–125) for candidates. Personnel Files for candidates for No. 89–125, within the control of DCOP, can be made available for inspection or duplication at a mutually agreeable time. Supplemental Response at 3 attached as PX 25 [emphasis added].

65. Defendant's First, Second and Third Supplemental Responses to Plaintiff's Second Interrogatory 25 were as follows:

*First Supplemental Answer to Interrogatory 25:* As indicated in Attachment D to defendant's answers to these interrogatories it appears that the plaintiff received the 10 points for residency. Additionally, it appears that Ms. Britton was not a resident at the time of the selection and Ms. Britton's interview score was 85 as compared to 80 for plaintiff. Also, see attached "Secured File" portion produced in defendant's Supplemental Responses to Plaintiff's Request for Production. Supplemental Answer at 11 attached as PX 20.

*Second Amended Supplemental Answer to Interrogatory 25:* Defendant previously identified the scores for plaintiff and Ms. Britton as resulting from an interview. This is not accurate as these score are the Ranking/Rating scores from DCOP. This fact was noted by Joan Murphy in her portion of defendant's Rule 30(b)(6) deposition, and this supplement is to formally incorporate her response into defendant's interrogatory answer. Additionally, from the selection certificate for Vacancy Announcement 89–125, previously produced, defendant notes that Mr. Walter Ridley (African American-male), Director of Department of Corrections, was the selecting official for this announcement. Supplemental Answer at 6–7 attached as PX 23.

*Third Supplemental Answer to Interrogatory No. 25:* The individuals who participated in the selection of Ms. Britton are: (a) Walter Ridley; (b) Earthel C. Foster. At the time of the selection, Ms. Britton was a resident to Maryland. Ms. Britton was the incumbent for the subject position and scored higher than Mr. Webb in the interview phase of the application process. Moreover, Ms. Britton was found to be better qualified and knowledgeable about the job than Mr. Webb. Mr. Britton's previous experience included crises management and placement of inmates as a result of the Occoquan fire, Youth Center disturbances and the Lorton Task Force. In that role, she coordinated the beginning of the inmate interstate initiative including transfers (air and ground), housing and traveling of prisoners throughout the country. In addition, she monitored female and male offenders and housing needs consistent with the Federal Bureau of Prisons and the new mental health requirements. Mr. Webb had no similar experience. A copy of her SF171 is included as Attachment No. 6. All candidates were evaluated in accordance with Chapter 8 of the District of Columbia Personnel Manual. Supplemental Answer at 10–11 attached as PX 24.

66. Defendant's First and Third Supplemental Responses to Defendant's Second Interrogatories 27 and 28 were as follows.[9]

*First Supplemental Response to Interrogatory No. 27*

Attachment F to defendant's answers to Plaintiff's Second Set of Interrogatories contains a November 9, 1990 memorandum appointing Bernard Braxton, Douglas Stempson and Warren Brag to the interviewing committee for Vacancy 90–167.

Additionally, tally sheets for the individuals interviewed were included in that attachment. The numerical results of the interviews are as follows for Robert Fulton and the plaintiff.

Douglas Stempson's scores for plaintiff and Robert Fulton:

| | |
|---|---|
| Plaintiff Isaiah Webb | 71 |
| Robert Fulton | 99 |
| Plaintiff Isaiah Webb | 65 or 67 |
| Robert Fulton | 99 |

James Bragg's scores for plaintiff and Robert Fulton:

Plaintiff Isaiah Webb 65 or 67

Robert Fulton 99

Defendant contends that from the numerical results selectee Robert Fulton scored higher than the plaintiff during the interview process, and it appears that as result of the interview he was selected over the plaintiff. Yet, defendant also contends that selectee Robert Fulton was not promoted to a Major from Vacancy announcement 90–167 and as evidenced by his latest Form 1 contained in his Personnel File, previously provided. Major Robert Fulton was promoted to his current position a *Major DS–008–12,* as a result of the competitive process on Vacancy Announcement 91–118. Further, as indicated on the Selection Certificate all candidates were equally rated as "Highly Qualified" prior to the interview process. Supplemental Response at 12–13 attached as PX 20.

*Third Supplemental Answer to Interrogatory No. 27*

Bernard Braxton, Douglas Stempson and Warren Bragg consisted of the interviewing committee for Major position—Vacancy No. 90–167. The numerical scores of which were provided in defendants' supplementation of February 24, 1997.

Supplemental Answer at 12 attached as PX 24.

*First Supplemental Response to Interrogatory No. 28*

Attachment F to defendant's answers to (Plaintiff's Second Set of) Interrogatories contains a November 9, 1990 memorandum appointing Bernard Braxton, Douglas Stempson and Warren Brag to the interviewing committee for Vacancy 90–167. Additionally, tally sheets for the individuals interviewed were included in that attachment. The numerical results of the interviews are as follows for Robert Fulton and the plaintiff.

Douglas Stempson's scores for plaintiff and Steven Smith:

| | |
|---|---|
| Plaintiff Isaiah Webb | 71 |
| Steven Smith | 97 |

James Bragg's scores for plaintiff and Steven Smith:

| | |
|---|---|
| Plaintiff Isaiah Webb | 65 or 67 |
| Steven Smith | 93 |

Bernard Braxton's scores for plaintiff and Steven Smith:

| | |
|---|---|
| Plaintiff Isaiah Webb | 65 |
| Robert Fulton | 99 |

Defendant contends that from the numerical results selectee Steven Smith scored higher than the plaintiff during the interview process, and it appears that as result of the interview he was selected over the plaintiff. Yet, defendant also contends that selectee Steven Smith was not promoted to a Major from Vacancy announcement 90–167. As indicated by (his latest Form 1) a letter contained in his Personnel File, previously provided, Steven Smith was laterally moved into his current position, a Major DS–007–12, from a Unit Manager's Position. Further, as indicated on the Selection Certificate all candidates were equally rated as "Highly Qualified" prior to the interview process.

9. Defendant did not include responses to Interrogatories 27 and 28 in its Second Supplemental Responses.

Supplemental Response at 13–14 attached as PX 20.

*Third Supplemental Answer to Interrogatory No. 28*

Bernard Braxton, Douglas Stempson and Warren Bragg consisted of the interviewing committee for Major position—Vacancy No. 90–167. The numerical results of the interviews were previously provided to plaintiff. Mr. Smith was a Unit Manager with previous experience as a supervisor. Supplemental Answer at 12 attached as PX 24.

67. In its Third Supplemental Responses, served on March 6, 1997, the District identified Earthel Foster for the *first time* as someone who was involved in the selection process for one of the positions at issue in Plaintiff's discrimination claims. In its court-ordered responses, the District also disclosed a number of details regarding Patricia Britton's selection for the 89–125 position, including the fact that interviews were conducted during the selection process. The District's Second Supplemental Response to Interrogatory 25 suggested that no interviews were held.

68. Notwithstanding the testimony in Joan Murphy's declaration, the statements of counsel during the February 4 and 5, 1997 30(b)(6) deposition and the admission of the District's counsel at the February 7, 1997 hearing that the District failed to adhere to applicable EEO regulations, Transcript at 40 attached as PX 21, none of the supplemental responses indicated that the District had destroyed files.

69. As discussed above, on March 6, 1997, Plaintiff noticed the deposition of the District's Custodian of records in an attempt to clarify the record regarding the missing documents.

70. The Notice of Deposition requested a witness able to testify regarding the following:

(a) The District's retention and/or destruction of records relating to vacancy announcement 89–125;

(b) The District's retention and/or destruction of records relating to vacancy announcement 89–163;

(3) The District's retention and/or destruction of records relating to vacancy announcement 90–167;

\*    \*    \*    \*    \*    \*

On March 13, 1997, the District proffered Joan Murphy to testify regarding the identified subjects.

71. When questioned with respect to the District's policy regarding maintaining Merit Case Files generally, Ms. Murphy testified as follows:

Q. What is the District's policy with regards to retaining the merit case files?

A. They're not to be maintained for more than two years.

Q. They're not to be maintained for more than two years?

A. That's correct.

Q. So are they held onto for two years and then destroyed?

A. That's correct.

Q. Would they ever be destroyed prior to that two-year period?

A. They should not be.

Q. Is there any special policy with regards to when a case is in litigation that they be maintained for longer than the two-year period?

A. I'm not aware of that.

Transcript at 292–93 attached as PX 38.

72. When asked whether the District abides by federal EEOC regulations regarding the destruction of documents, Ms. Murphy testified as follows:

Q. Are you aware of—are you familiar with the EEOC regulations regarding the destruction of documents?

A. Somewhat, yes.

Q. And what do you know about those regulations?

A. I know that they're supposed to be maintained, but I don't recall—I have not seen it in writing and I don't recall the duration.

Q. Is there any manner by which the District flags the merit case files for which litigation has been initiated?

A. I don't know.

Q. Do you know who would know that information?

A. No.

Q. Are you the person that would know?

A. I don't know.

*Id.* at 293.

73. With respect to the three Merit Case Files at issue in this case, Plaintiff inquired how much time the District spent in attempting to determine whether in fact the Merit Case Files had been destroyed. The brevity of the District's search is reflected in the following excerpt from Ms. Murphy's deposition:

Q. When did you first begin looking for the merit case files for 89–125, –163 and 90–167?

A. I can't give you an exact date. I'm not even sure I can give you a month. It was when I received notification regarding this particular case.

Q. Do you know approximately when that was? Was it in 1997?

A. Yes.

Q. Do you know who asked you to look for those files?

A. I don't remember if it was—I know that it was Corporation Counsel. I don't remember which representative from Corporation Counsel made the initial contact regarding the file.

Q. Do you know when somebody at Corporation Counsel notified you to begin looking for the file? Was that also in 1997?

A. Yes.

Q. How long did you look for the files?

A. Not very long.

Q. How long is not very long?

A. I went to where we housed the merit case files, which we keep in chronological order, and there were none there for '89 or '90.

Q. How long would you estimate that took you to do?

A. Minutes.

*Id.* at 299–300.

74. Plaintiff specifically inquired whether the District had destroyed the Merit Case Files for Vacancy Announcement Numbers 89–125, 89–163 and 90–167. Ms. Murphy testified as follows:

Q. Do you know whether the merit case files for those three—for D.C. 89–125, 89–163 and 90–167 have been destroyed?

A. I don't know.

Q. Do you know anyone that would know?

A. No.

Q. Do you know if there's any way to determine whether they've been destroyed or not?

A. No, I don't know.

Q. Do you have any evidence that would lead you to believe that these were not—those merit case files were not destroyed?

A. No, I don't.

Q. Is it your understanding that they were destroyed pursuant to the two-year District policy regarding destruction of merit case files?

A. Is it my understanding? I'm not sure what you're asking me. I know what the policy is and I know that by these numbers they appear to be older than two years.

Q. Okay. But you don't know whether they've been destroyed or not?

A. I have not seen them, I have no knowledge of them, and if they are more than two years old they probably have been destroyed, but I have no particular knowledge of them.

*Id.* at 294–95.

75. Notwithstanding Ms. Murphy's hesitancy on this subject, at the March 19, 1997 pretrial conference, counsel for the District admitted on the record that the District had in fact destroyed all of the Merit Case Files, as well as other documentation relevant to

Plaintiff's claims. Transcript at 24–25, 29–30, 35–36, 45–46 attached as PX 39.

76. At the March 19, 1997 Pretrial Conference, five days before trial was scheduled to begin, counsel also offered to supplement *further* Defendant's Third Supplemental responses. *Id.* at 38–39. However, without the documentation from the Merit Case Files, it would be impossible for Plaintiff to adequately challenge this last-minute discovery offered by the District.

## I. CONCLUSIONS OF LAW

### A. Power to Sanction

1. Fed.R.Civ.P. 37, by its own terms, authorizes a district court to punish a "party who fails to obey an order, to provide or permit discovery." *Id.* at Rule 37(b)(2).

2. An incomplete or evasive answer or response is treated under the rules as a failure to answer or respond. Fed.R.Civ.P. 37(a)(3).

■ 3. In addition to the power to sanction under Rule 37, this court has the inherent power to protect the integrity of the judicial system, and prevent abuses of the judicial process. *Shepherd v. American Broadcasting Companies,* 62 F.3d 1469, 1474 (D.C.Cir.1995).

■ 4. Both the discovery misconduct of defendant in failing to timely produce all requested materials, and the failure to retain relevant documents are actions sanctionable under the court's power.

### B. Application of C.F.R. § 1602.31 & the District's Actions

■ 5. Because the court can only sanction a defendant for the failure to preserve evidence when a party has disregarded its obligation to do so, *Shepherd v. American Broadcasting Companies,* 62 F.3d 1469, 1481 (D.C.Cir.1995), this court must address the application of the relevant EEOC regulation. 29 C.F.R. § 1602.31 provides:

> Any personnel or employment record made or kept by a political jurisdiction (including but not necessarily limited to requests for reasonable accommodation, application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, layoff, or terminations, rates of pay or other terms of compensation, and selection for training or apprenticeship) shall be preserved by the political jurisdiction for a period of 2 years from the date of the making of the record or the personnel action involved, whichever occurs later. In the case of involuntary termination of an employee, the personnel records of the individual terminated shall be kept for a period of 2 years from the date of termination. Where a charge of discrimination has been filed ... the respondent political jurisdiction shall preserve all personnel records relevant to the charge or action. The term "personnel record relevant to the charge," for example, would include personnel or employment records relating to the person claiming to be aggrieved and to all other employees holding positions similar to that held or sought by the person claiming to be aggrieved; and application forms or test papers completed by an unsuccessful applicant and by all other candidates for the same position as that for which the person claiming to be aggrieved applied and was rejected.

6. By destroying the merit case files and papers from the plaintiff's personnel file, the District violated this regulation. The District attempts to excuse its violation claiming that it did not have sufficient notice to know which positions plaintiff intended to challenge, and thus did not know which files to retain. The court rejects this argument for several reasons.

7. Initially, the court notes that the District cannot rely on lack of notice to justify the destruction of the temporary records from plaintiff's personnel file. The regulation specifies that personnel records must be kept for a period of two years from any involuntary termination. Plaintiff was terminated in June of 1994, and according to the District, the temporary records were taken out in either late 1994, or January of 1995. Def. Proposed Findings at 13. Thus, these documents were destroyed approximately 9 months after plaintiff's involuntary termination, a clear violation of the regulation.

8. Under the regulation, the District was under an obligation to keep the merit case file for 89–125 until October of 1991, two years after the position had been filled. In April of 1991, plaintiff filed an informal grievance concerning position 89–125, necessitating the retention of this merit case file for the purposes of the grievance. Plaintiff withdrew his grievance in June of 1992.

9. Under the regulation, the District was under an obligation to keep the merit case file for 90–167 until November, 1992, two years after the application process for the position.

10. Thus, to determine if the District had notice to warrant the retention of the merit case files, the court must consider all of the proceedings before June of 1992. The two most telling documents are the original complaint, filed in November, 1990, and the first amended complaint, filed in May, 1992. In the first complaint, plaintiff did not identify any specific positions for which he had been denied a promotion for alleged discriminatory purposes. However, he did allege that the defendant had a "blatant policy and practice of promoting whites and females to higher management positions and more lucrative jobs over better qualified black males."

11. In the first amended complaint, plaintiff did identify specific positions, as well as certain selectees whom he alleged defendant had chosen over himself for discriminatory purposes. Plaintiff mentioned, by name, Patricia Britton, the selectee for 89–125, and Steven Smith and Robert Fulton, two of the selectees for 90–167. Additionally, plaintiff relied on numerous statistics to support his allegation of a pattern and practice of gender and racial discrimination at the Department of Corrections.

■ 12. The court concludes that the naming of the selectees for the positions, together with the allegations of a pattern and

practice of discrimination, is sufficient to put the District on notice that the relevant documents should have been retained.

13. In *United States v. California Department of Corrections,* 1990 WL 145599 (E.D.Cal.1990), the United States filed suit against the defendant on behalf of a female employee. Although the employee had filed a charge of discrimination concerning a failure to hire in October of 1983, the district court held that the defendant had been under a legal duty to maintain personnel documents relating to a transfer request in January of 1983 because with its knowledge of the circumstances, defendant should have surmised that the failure to transfer was fairly encompassed in the initial charge of discrimination. *Id.* at *9. Similarly, the court concludes that with its knowledge of plaintiff's allegations of a pattern and practice of discrimination, and the specific naming of the selectees for the positions, defendant should have surmised that the named positions were encompassed in plaintiff's litigation.

14. The court is disturbed by the specious nature of the District's reliance on lack of notice as a justification for the destruction of the documents. This argument implies that if the District had received what it would consider sufficient notice, the documents would have necessarily been retained in compliance with the regulation.[10] In fact, the record indicates that there was no procedure in place to ensure that relevant employment records were flagged so that they would not be destroyed. Although one of the personnel officers offered by the District was aware of the regulation, she was unable to specify if or how the District was complying.

15. Defendant argues that this court cannot enter a sanction against the District based upon the destruction of documents because the destruction was inadvertent, and done in compliance with the District's policy

---

10. In fact, there is evidence in the record that the District did not even always follow its own internal regulation of keeping documents for only two years. In response to an interrogatory in 1991, the District stated that it could not produce information from before 1988 because the merit case files had been discarded. However, answers were not provided for positions from 1989–1991. While defendant says it is unable to explain this,

"it does appear, however, that all pertinent materials available to counsel at that time were provided to Webb." Def. Proposed Findings at 9, n. 3. If this is in fact true, it means that documents were destroyed before the internal two year period expired. The other alternative is that the District did not provide the requested information it had at that time.

of destroying these documents after 2 years. The court rejects this argument for several reasons.

16. Initially, ignorance of a federal regulation is not an excuse, as found by the court in *Shipley v. Dugan*, 874 F.Supp. 933 (S.D.Ind.1995). In *Shipley*, the defendant employer attempted to excuse its destruction of documents in violation of 1602.31 on the grounds that the violation was inadvertent, and the records were destroyed routinely consistent with a policy to destroy all such records one year after a personnel action. *Id.* at 939–40. However, the court concluded that "ignorance of the specific dictates of a federal regulation is no excuse" and that plaintiff was entitled to a remedy. *Id.* at 940.

17. Furthermore, there is evidence that at least one District personnel official, Joan Murphy, had knowledge of the existence of EEOC regulations requiring maintenance of documents, yet was unaware of any procedure by which the District would flag relevant files once litigation has been initiated. Thus, the District knew of the requirement, but chose to ignore it. The court concludes that this was not inadvertent, but willful.

18. Additionally, the District's argument concerning the good faith destruction does not comport with the relevant law. As noted by the Court of Appeals for the District of Columbia Circuit, a sanction for failure to preserve evidence is appropriate when a party has consciously disregarded its obligation to do so. *Shepherd*, 62 F.3d at 1481. Thus, the court does not need to find bad faith destruction in order impose sanctions.

19. For these reasons, the court concludes that § 1602.31 was violated by the District, and in doing so the District consciously disregarded plaintiff's rights.

## C. Appropriate Sanction

20. Having concluded that the District consciously disregarded its obligations to retain the documents, and having previously determined that the District committed misconduct during discovery, the court must now determine the appropriate sanction. In this analysis, the court necessarily considers the effect of the discovery misconduct and the effect of the lost documents, because it is the combined effect of both that necessitates a severe sanction.

■ 21. In determining the appropriate sanction, this court must consider three factors: the prejudice to plaintiff, the prejudice to the judicial system, and the need to deter similar misconduct in the future. *Bonds v. District of Columbia*, 93 F.3d 801, 808 (D.C.Cir.1996).

■ 22. First, the court will consider the prejudice suffered by plaintiff. Prejudicial misconduct sufficient for a default judgment has been defined as a situation where "the other party is so severely [prejudiced] as to make it unfair to require the other party to proceed with the case ..." *Shea v. Donohoe Const., Co.*, 795 F.2d 1071, 1074 (D.C.Cir. 1986). The court does not hesitate to find that plaintiff was so severely prejudiced by the District's conduct that it would be unfair to require plaintiff to proceed with the trial because no lesser alternative can compensate plaintiff for the loss of evidence caused by the destruction and delay of defendant.

23. Defendant argues that none of the misconduct impairs plaintiff's ability to establish his prima facie case for the non-selection claims. The court agrees that plaintiff could have met this initial burden with the available evidence. But, assuming that defendant would have been able to show a legitimate business reason for the action, plaintiff would then have had the burden to prove that the given reason was pretextual. In order to prepare for this burden, plaintiff needed to know the names of the individuals involved in the selection of employees over plaintiff in order to depose them and build a case. By delaying the disclosure of these names for so long, defendant thwarted plaintiff's ability to prepare for trial. This injury is directly traceable to defendant's conduct: if the files had not been destroyed, the information sought would have been readily available.

24. Additionally, the destruction of papers from plaintiff's personnel file prejudices his non-selection case. Plaintiff does not have his evaluations for the periods of 4/1/87 to 3/31/89 and 4/1/90 to 6/30/91. What plaintiff's superiors thought of his work during

these times so close to the denial of positions is clearly relevant to whether he deserved to be selected for a higher position. While it is unclear when these documents were discarded by the District, it is clear that it must have been after the suit was filed, and thus the District was on notice of its obligation to keep the documents.

25. Plaintiff's termination case is also prejudiced because of the destruction of the papers from his personnel file.[11] Any and all of the temporary documents were removed from plaintiff's file. These documents included any official reprimands as well as corrective or adverse action papers which plaintiff could have used to bolster his claims of retaliation, which allegedly culminated in his termination from the Department of Corrections.[12] These documents, which would have evidenced any time a superior was claiming plaintiff did or did not do something right during his last two years of employment, are exactly the type of record that plaintiff would have wanted to examine and use in proving his case. Any and all actions taken against plaintiff in the time after he filed his complaint and prior to his termination is highly probative of his claim of retaliation. Because of the destruction, any of these documents are no longer available to plaintiff.

26. Defendant argues several times that plaintiff is at fault for part of the prejudice because plaintiff chose to not depose the members of the committees that selected the individuals for the 89–125 and 90–167 positions. Once again, the District is choosing to ignore the record, and the role its delinquent production played in this case. The District did not identify William Plaut as the selecting official for 90–167 until February 24, 1997, or Earthel Foster as the interviewer for 89–125 until March 6, 1997, after a court order required the District to supplement the answers.[13] The interviewing committee for 90–167 was identified on February 3, 1997. The identification of Plaut was the day discovery was to close, and the identification of Foster was after the close of discovery, and only two and a half weeks before the trial was scheduled to start. Defendant never explains how plaintiff is supposed to have deposed the numerous individuals, outside of the discovery period, and prepare for trial.

27. Second, the judicial system has suffered because of the District's conduct. The Federal Rules of Civil Procedure were designed to permit discovery to proceed without direct supervision by the court, and defendant's misconduct has occupied the court's attention with many hearings and motions. Other litigants with meritorious cases have been denied the opportunity to obtain swift justice.

28. Additionally, the court must protect its calendar. This litigation started in 1990, and the court was under an obligation to see that the plaintiff was given the opportunity to have his claims addressed. After prolonged mediation was ultimately unsuccessful, the only way for the court to guarantee a timely outcome was to set a trial date, and enforce it. Through its conduct, the District put the court in the position of either forcing the plaintiff to go to trial unprepared, or face further delay and prejudice that necessarily accompanies a case with the passage of time, in this case over 7 years. The judicial system, and this court's ability to meet its obligations to plaintiff were thus prejudiced by defendant's misconduct.

29. Third, permitting the defendant to abuse the discovery process and to obtain

---

11. Defendant argues that every paper regarding plaintiff's termination was turned over, and that there is no possibility of prejudice for that claim. This statement is incorrect. The record reflects that any temporary papers added to plaintiff's file during his last two years were never viewed by plaintiff and were not produced in the litigation.

12. Defendant correctly argues that plaintiff cannot prove what these documents would have shown. However, this is the fault of defendant because of the improper destruction.

13. The District argues that plaintiff was aware of Ms. Foster's role because her name was identified on the selection certificate produced in both 1991 and 1996. Having examined the selection certificate, the court cannot decipher which name is purportedly Ms. Foster's, and neither could a defense witness deposed by the plaintiff. Presumably it was plaintiff's inability to read the names that led in part to the interrogatories. However, instead of answering the interrogatory, the District simply referred plaintiff back to the selection certificate.

advantages through delay would discourage other litigants who contemplate bringing actions against the District of Columbia and its officials. Furthermore, the court finds that the District must be deterred from continuing to consciously disregard the retention regulations. These regulations were implemented so that plaintiffs would be able to pursue discrimination claims. Even knowing of the regulation's existence, the record shows no steps that were taken to ensure that the requirements were followed. Thus, the court must take steps to protect the rights of this plaintiff and future litigants.

■ 30. The District attempts to rely on its rolling supplemental responses as evidence that it was providing discovery in good faith. This position is without support in the law. In response to numerous of plaintiff's document requests, the District initially responded that "a request has been made to the appropriate agency for additional documents responsive" to the request. If the District was unable to respond to the document request, the proper response was to file a motion for an enlargement of time with the court. Instead, the District arrogated to itself the right to provide a cursory, incomplete response with a promise to update in the future. This is totally improper, and this court has previously used similar conduct to support a finding of discovery misconduct by the District in another case. *Monroe v. Ridley*, 135 F.R.D. 1, 4 (D.D.C.1990). *See also Green v. Blazer Diamond Products, Inc.*, 1994 WL 715632 (D.D.C.).[14]

31. The District has also demonstrated bad faith by objecting to court-ordered discovery. When defendant filed the responses on March 6, 1997, the time for objections was past; the only options were to answer, to ask the court to reconsider its order, or to face sanctions under Fed.R.Civ.P. 37(b). The District did not answer without objection or move for reconsideration, and the court can only view the objections as further proof of defendant's intent to disrupt the discovery process and to prevent plaintiff from obtaining the information he needed to build his case. The District attempts to defend the inclusion of objections as a mistake, and counsel for the defendant has stated that no information was withheld based on the objections. Yet, one of the District's central mistakes in this case was its refusal to ever confirm when plaintiff had received all responsive information. Thus, the inclusion of objections is another example of this tactic which kept plaintiff scrambling and unable to prepare for trial. Furthermore, this court has sanctioned the District for similar conduct in another case. *Monroe*, 135 F.R.D. at 4.

■ 32. Because decisions on the merits are favored by our system, before a court can resort to entering a default judgment, the court must consider all other available options. *Bonds*, 93 F.3d at 808, *quoting Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1075 (D.C.Cir.1986). Because no alternative remedy exists which could adequately compensate for the prejudice suffered by plaintiff, the court concludes that default judgment is the only appropriate remedy.

■ 33. Courts generally respond to document destruction with the sanction of dismissal or default when either the destroyed document is dispositive of the case so that issue-related sanctions would effectively dispose of the merits anyway or where the "guilty party has engaged in such wholesale destruction of primary evidence regarding a number of issues that the district court cannot fashion an effective issue-related sanction." *Shepherd v. American Broadcasting Companies*, 62 F.3d at 1479.

34. The District destroyed papers from defendant's personnel file, as well as the merit case files from the two positions he was challenging. Furthermore, the District did not inform plaintiff of the inability to locate the relevant files until January, 1997, over two months after the first interrogatories were served, and the District did not provide

---

**14.** It is true that if a party, after providing full and complete answers, learns of additional information beyond the party's original knowledge and control, the party may supplement the original answers. This is not the situation presented by the record in this case where defendant's used "supplementing answers" to avoid coming to the court and seeking an enlargement of time to respond to discovery requests.

confirmation, oral or written, of any destruction until the beginning of February of 1997. This was less than one month before the end of discovery, and one and a half months before the trial was scheduled to begin. Because of the destruction, plaintiff was prejudiced because relevant documents were destroyed. Because of the extreme delay in notice, plaintiff was prejudiced in that he was unable to prepare for trial. Four days before the trial, the court could not fashion any remedy that would compensate for both the destruction and delay.

35. Defendant argues that either an adverse inference jury instruction or evidence preclusion would have been appropriate. Yet, defendant has never proposed any instructions or preclusions which would adequately remedy the prejudice suffered by plaintiff. Part of the District's continuing difficulty is the refusal to admit that the defendant committed discovery misconduct, despite the earlier order of this court reaching just that conclusion.[15] Regarding the non-selection claims, an adverse inference could not have compensated for the delay suffered by plaintiff and the resulting inability to prepare for trial. As for the termination claim, the only adverse inference that would adequately compensate plaintiff would be that the destroyed records would evidence that actions were taken in plaintiff's final two years that would support his retaliation claim. Because this inference would effectively dispose of the merits of the claim, a default judgment is appropriate.[16]

36. The conclusion that default is the only appropriate sanction is bolstered by the court's need to address the injury suffered by the judicial system, as well as to prevent such conduct by the District in the future. As previously stated, a District official admitted to knowing of a federal retention requirement, but there was no procedure to see that the requirement was met. The court must take steps to ensure that the requirement is met in the future.

37. In *Bonds*, the Court of Appeals concluded that if a discovery sanction is based only on a need to deter future discovery misconduct then the sanction must be supported by a finding of flagrant or egregious misconduct by the defendant. *Id.* at 908. Even though the court believes that the record is replete with flagrant misconduct, such a finding is not necessary to the court's conclusion in this case that a default judgment is the appropriate remedy. The basis for this decision is the extreme irreparable prejudice inflicted on plaintiff by defendant's misconduct, as well as the harm to the judicial system.

38. The court is painfully aware of the Court of Appeals decisions in *Bonds* and *Shepherd*.[17] The court is attempting to apply the law as stated by the D.C. Circuit, and believes that under the powers to sanction as recognized in those decisions, the only correct result in this case is a default judgment. Under the law, no plaintiff should be forced to endure the injury that has resulted from defendant's actions.

### III. Conclusion

For the stated reasons, a judgment of default is entered in favor of plaintiff, and defendant's motion for reconsideration is denied.

A separate order shall be issued today.

---

**15.** Defendant maintains that "[i]t is demonstratively clear from the record that the defendant continued, in good faith, to provide all available relevant documents to the plaintiff." Def. Proposed Findings at 22. The court concludes that it is demonstratively clear from the record that defendant provided to plaintiff relevant documents that had not been destroyed when it was convenient for defendant to do so regardless of discovery deadlines, plaintiff's need to prepare for trial, and court orders.

**16.** In both *Shepherd* and *Bonds*, the Court of Appeals stresses the importance of considering the use of lesser sanctions before entering a default judgment. *Shepherd*, 62 F.3d at 1480, *Bonds*, 93 F.3d at 808. This is a very difficult task, but the court concludes that no lesser sanction can adequately compensate plaintiff for the injuries he has suffered as a result of defendant's misconduct. If this case were to be remanded with instructions to construct a lesser sanction, the court would be unable to do so.

**17.** Royce C. Lamberth, *Opening Comments on Modern Discovery Practice: Search for Truth or Means for Abuse?*, 41 N.Y.L. Sch. L.Rev. 453, 454–456 (1997).

### ORDER

For the reasons set forth in the accompanying Findings of Fact and Conclusions of Law, it is

ORDERED that a judgment of default is hereby entered in favor of plaintiff, against defendant, and it is further

ORDERED that defendant's motion for reconsideration is DENIED, and it is further

ORDERED that plaintiff shall, within 10 days, file a proposed relief order and supporting memorandum (with appropriate evidence) setting forth his proof of damages, and it is further

ORDERED that defendant shall file its opposition to plaintiff's proof of damages within 7 days thereafter, and it is further

ORDERED that a hearing to determine damages shall be held on September 2, 1997, at 10:00 a.m.

SO ORDERED.