**Dian L. CASTLE, Appellant,**

v.

**Robert E. RUBIN, Secretary, Department of the Treasury, Appellee.**

No. 95–5087.

United States Court of Appeals, District of Columbia Circuit.

March 15, 1996.

Michael J. Kator was on the opposition to the motion for summary affirmance, Washington, DC, for appellant.

Eric H. Holder, Jr., United States Attorney, and R. Craig Lawrence and Madelyn E. Johnson, Assistant United States Attorneys, were on the motion for summary affirmance, Washington, DC, for appellees

Before: SILBERMAN, SENTELLE, and RANDOLPH, Circuit Judges.

Opinion for the Court filed PER CURIAM.

## ON MOTION FOR SUMMARY AFFIRMANCE

PER CURIAM:

Dian Castle appeals district court orders denying her reinstatement and front pay and awarding her only partial back pay after a jury found that she was terminated in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.* (1993).[1] The district court relied on the after-acquired evidence doctrine, which allows the court to limit relief based on evidence of misconduct acquired after an unlawful termination. We reject Castle's contention that the doctrine does not apply when the Title VII plaintiff would have become a tenured federal employee covered by the Civil Service Reform Act of 1978 as amended (codified in scattered sections of 5 U.S.C.) after her unlawful termination but before discovery of the after-acquired evidence. Accordingly, we affirm the district court's orders.

**I.**

Castle was employed in the Office of the Comptroller of the Currency (OCC) from February 11, 1991, until January 10, 1992, when she was terminated during her probationary period. On December 30, 1993, Castle filed this action alleging, *inter alia,* that her termination was the product of sex discrimination. On November 4, 1994, a jury found that Castle was terminated in violation of Title VII and awarded her $75,000 in damages. The parties orally stipulated that the court would decide Castle's entitlement to reinstatement, front pay, and back pay on the basis of the entire record.

On November 8, 1994, the court denied Castle reinstatement and front pay and awarded her back pay only from January 10, 1992, until September 30, 1992, the date on which the OCC discovered that she had engaged in plagiarism while employed at the agency. The court found that Castle had plagiarized a book entitled *The Coach,* in violation of federal copyright laws, and unspecified works by J.H. Harliss and Jeffrey Nelson Associates while preparing training materials for the OCC. The court also found that the OCC would have fired Castle for this plagiarism had she still worked for the OCC when it discovered her misconduct. The court determined that reinstatement and front pay were inappropriate in light of this after-acquired evidence of misconduct, and because reinstatement would create intense hostility or friction in the workplace. The court also held that Castle was entitled to back pay only for the period between her dismissal and the OCC's discovery of her misconduct.

On November 28, 1994, Castle moved to amend the judgment. Castle noted that, but for her unlawful termination, she would have become a tenured employee covered by the Civil Service Reform Act (CSRA) on February 11, 1992, months before the OCC discovered her plagiarism. She argued that under *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), the court

---

**1.** Castle also appeals an order awarding her attorney's fees. That aspect of her appeal does not, however, warrant a published opinion.

lacked jurisdiction to utilize the after-acquired evidence doctrine because the court had "adjudicate[d] and effectuate[d] a final unappealable removal from the Federal service" for plagiarism, and the CSRA gives the Merit Systems Protection Board (MSPB) exclusive authority over such disciplinary matters. It was also contended that the court had denied her the rights she would have enjoyed under the CSRA—including a pretermination right to notice and an opportunity to respond and a post-termination right of appeal to the MSPB—in violation of the Act and the Constitution, and that the court had denied her "make whole" relief by denying her these rights. Finally, Castle argued that discharge is an excessive penalty for plagiarism as a matter of law.

The district court denied the motion to amend the judgment on January 18, 1995. Although the parties had stipulated that the court would decide the reinstatement, front pay, and back pay issues, the court reached the merits of Castle's jurisdictional argument because she claimed the stipulation did not encompass jurisdiction. The court determined that it had broad discretion to fashion appropriate equitable relief, and that nothing in Title VII or the caselaw interpreting it limited the court's discretion in the manner suggested by Castle. The court added that *Fausto*—which held that nonpreference eligible members of the excepted service may not obtain judicial review of certain types of adverse personnel actions—did not require a different result, because *Fausto* did not arise under Title VII and did not address the court's discretion to fashion equitable relief for a Title VII plaintiff. Finally, the court declined to speculate on how the MSPB would view a termination for plagiarism on the facts of this case.

The Secretary of the Treasury moves for summary affirmance of the court's orders.

## II.

■ The district court has broad discretion to fashion appropriate equitable relief for a Title VII plaintiff. The statute provides:

If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which *may* include, but is not limited to, reinstatement or hiring of employees, *with or without* back pay ..., or *any other equitable relief as the court deems appropriate.*

42 U.S.C. § 2000e–5(g)(1) (1993) (emphasis added). The Supreme Court has likewise noted that "[t]he [statutory] scheme implicitly recognizes that there may be cases calling for one remedy but not another, and—owing to the structure of the federal judiciary—these choices are, of course, left in the first instance to the district courts." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 415–16, 95 S.Ct. 2362, 2370–71, 45 L.Ed.2d 280 (1975); *see also Ford Motor Co. v. EEOC,* 458 U.S. 219, 226, 102 S.Ct. 3057, 3062–63, 73 L.Ed.2d 721 (1982).

Days after the district court denied Castle's motion to amend the judgment, the Supreme Court confirmed that a district court may deny reinstatement, front pay, and full back pay based on after-acquired evidence of employee misconduct. In *McKennon v. Nashville Banner Publishing Co.,* —— U.S. ——, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), the Court held that "as a general rule ..., neither reinstatement nor front pay is an appropriate remedy" for an unlawful termination when the employer has after-acquired evidence of misconduct "of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Id.* at —— – ——, 115 S.Ct. at 886–87. The Court reasoned that "[i]t would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds." *Id.* at ——, 115 S.Ct. at 886. "The beginning point in the trial court's formulation of a remedy should be calculation of back pay from the date of the unlawful discharge to the date the new information was discovered." *Id.* And, the trial court "can consider taking into further account extraordinary equitable circum-

stances that affect the legitimate interests of either party." *Id.*

Although *McKennon* arose under the Age Discrimination in Employment Act (ADEA), its principles clearly apply in Title VII actions. *See id.* at ——, 115 S.Ct. at 884 (stating that "ADEA and Title VII share common substantive features and also a common purpose"); *see also Russell v. Microdyne Corp.,* 65 F.3d 1229, 1238 (4th Cir.1995); *Wallace v. Dunn Construction Co.,* 62 F.3d 374, 378 (11th Cir.1995) (en banc); *Wehr v. Ryan's Family Steak Houses, Inc.,* 49 F.3d 1150, 1153 (6th Cir.1995). Castle nonetheless contends that *McKennon* does not govern this case, because *McKennon* concerned a private, at-will employee rather than a career federal employee entitled to the protections of the CSRA. We are not persuaded.

■ Castle argues that the district court lacked jurisdiction to utilize the after-acquired evidence doctrine because the court's remedial decision constituted a termination of her employment or an effectuation of the OCC's termination of her employment for plagiarism. Relying on *Fausto,* Castle asserts that the MSPB has exclusive jurisdiction over such adverse personnel actions. Castle suggests that the court was required to reinstate her, leaving any termination for plagiarism to the OCC with subsequent review by the MSPB.

*Fausto* provides no support for Castle's argument, as *Fausto* did not address Title VII or the district court's remedial discretion thereunder. Moreover, Castle's argument rests on a faulty premise. The district court did not take or approve any adverse personnel action against her. The court merely exercised its discretion to fashion an appropriate equitable remedy for her prior unlawful termination by the OCC. Finally, and most importantly, the court, not the MSPB, had jurisdiction over Castle's discrimination claim, including jurisdiction over the remedial aspects of the claim.

Tenured employees and applicants for employment may pursue certain discrimination claims before the MSPB. Specifically, if the employee or applicant "has been affected by an action which [she] may appeal to the [MSPB]" and she alleges that "a basis for the action" was discrimination prohibited by various provisions, including Title VII, she may pursue the discrimination claim before the MSPB. *See* 5 U.S.C. § 7702(a)(1) (1994).

■ Absent allegations of discrimination based on marital status or partisan political reasons, however, probationary employees like Castle may not pursue discrimination claims before the MSPB. Only "employees" or applicants may appeal to the MSPB, and the CSRA defines "employee" to exclude probationary employees. 5 U.S.C. §§ 7511(a)(1)(A) and 7701(a) (1994); *Wren v. MSPB,* 681 F.2d 867, 871 (D.C.Cir.1982); *accord Ferry v. Hayden,* 954 F.2d 658, 660–61 (11th Cir.1992). To the extent that a probationary employee believes her termination was the result of a prohibited personnel practice under 5 U.S.C. § 2302(b) (1994), she must submit her complaint to the Office of Special Counsel in the first instance. *See Ferry,* 954 F.2d at 660–61; 5 U.S.C. §§ 1214(a)(1)(A), (a)(3), and (b) (1994). Castle does not allege, however, in her complaint or her pleadings before this court that she complained to the Office of Special Counsel. Thus, the court, not the MSPB, had jurisdiction over Castle's discrimination claim. Furthermore, the court's jurisdiction encompassed both liability and remedies. Castle's suggestion that the proceedings should have been bifurcated, with the MSPB participating in the remedial phase, does not comport with the relevant statutes. We therefore conclude that the court had jurisdiction to utilize the after-acquired evidence doctrine in fashioning an equitable remedy for Castle's unlawful termination by the OCC. We add that the court would have been authorized to utilize the doctrine even if Castle had been a tenured employee. If a tenured employee elects to pursue a discrimination claim before the MSPB, Castle's concerns do not arise. If the employee cannot or elects not to proceed before the MSPB, but instead proceeds before the courts and/or the EEOC, she has no grounds to complain that she was improperly denied access to the MSPB.

■ Castle next argues that the district court denied her make-whole relief because, but for her unlawful termination by the OCC,

she would have become a tenured employee and would then have been entitled to the protections of the CSRA if the OCC had terminated her for plagiarism. As she did not receive these protections, she asserts that she is in a worse position than she would have been absent discrimination. She also asserts that the denial of these protections violated the CSRA and the Due Process Clause.

■ Although one "purpose of Title VII [is] to make persons whole for injuries suffered on account of unlawful employment discrimination," *Albemarle Paper Co.*, 422 U.S. at 418, 95 S.Ct. at 2372, Castle seeks relief to which she was not entitled as a probationary employee: MSPB participation in the remedial aspect of her discrimination claim. Furthermore, the district court proceedings afforded Castle due process. Castle received notice of and an opportunity to respond to the OCC's claim that she had engaged in plagiarism and should be denied reinstatement and full back pay as a result. She also received thorough written decisions explaining the basis for the district court's agreement with the OCC. Finally, although Castle complains that she did not receive an appeal to the MSPB, we have already concluded that she was not entitled to such an appeal. While the incidental effect of the court's remedial decision may have been to deny Castle certain rights she would have enjoyed under the CSRA had the remedy included reinstatement, this factor does not render the decision legally erroneous or an abuse of discretion.

■ Finally, assuming the district court had authority to decide the after-acquired evidence issue, Castle argues that the court was required to find not only that the OCC would have terminated her for plagiarism, but also that the MSPB would have sustained the termination, a finding the court did not make. Castle refers to *Tri v. Securities and Exchange Commission*, 24 M.S.P.R. 90 (1984), and suggests that the court could not have made such a finding because termination is an excessive penalty for plagiarism as a matter of law.

The district court may not deny reinstatement based on after-acquired evidence of misconduct if the employer could not lawfully have fired the employee for that conduct. Castle has not, however, shown that termination is an excessive penalty for plagiarism. In the *Tri* decision on which she relies, the MSPB held that the Director of the Office of Personnel Management was not entitled to reconsideration of an order mitigating an employee's removal to a demotion, where the employee had committed plagiarism and failed to meet minimum performance standards. *Tri* did not, however, discuss the nature or circumstances of the plagiarism, nor did it hold that an agency may never terminate an employee for plagiarism. *Tri* merely held that a challenge to the Board's application of *Douglas v. Veterans Admin.*, 5 MSPB 313, 5 M.S.P.R. 280 (1981) (establishing standards governing mitigation of penalties), to the facts of a particular case is not a basis for reconsideration because it is not an allegation of error in the Board's interpretation of a civil service law, rule, or regulation. Thus, *Tri* does not establish that termination is an excessive penalty for plagiarism as a matter of law.

Because Castle's arguments are without merit, we grant the Secretary's motion for summary affirmance.